UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12138-RWZ

RAYMOND COOK, *et al.*

v.

MICHAEL MALONEY, *et al.*

ORDER

March 30, 2010

ZOBEL, D.J.

## I.     Overview

Plaintiffs, now six in number, are present or former inmates at Massachusetts Correctional Institution-Cedar Junction ("MCI-Cedar Junction").  Defendants are employees of the Massachusetts and Pennsylvania Departments of Correction ("DOC"). In a complex and lengthy amended complaint, plaintiffs have alleged several separate and distinct sets of claims, including violations of federal and state constitutional rights.  Several claims were previously dismissed, and still more claims remain pending.

In this order, I now separately address certain of the claims of one plaintiff, Francis Hannon, who was convicted and sentenced in Pennsylvania and later transferred to Massachusetts.  Hannon claims against officials of the Departments of Correction in both Massachusetts and Pennsylvania for alleged violations of his rights in connection with the transfer.

**II.     Facts**

Plaintiff was convicted in Pennsylvania in 1978 and was sentenced to life imprisonment. See generally Docket # 76, First Amended Complaint, ¶¶ 82-83. While incarcerated, he began to act as a "jailhouse lawyer," filing petitions for post-conviction relief both on his own behalf and on behalf of other prisoners. Id. In 1997, pursuant to an Interstate Correction Compact governing the transfer of inmates between states, the Pennsylvania DOC began a series of transfers of Hannon to out-of-state prisons, including prisons in Maryland, Virginia, and the District of Columbia. In May 2001, he was returned to Pennsylvania. Id. Six months later, in December 2001, he was moved again, this time to Massachusetts.[1] Id. at ¶¶ 84-85. This move incidentally resulted in his going from a medium security prison to a maximum security prison and being housed further from his family. Id. at ¶ 87. He contends that the decision to transfer him from Pennsylvania to Massachusetts was directed by Dr. Jeffrey A. Beard, Secretary of the Pennsylvania DOC.[2]

Hannon further contends that some of his legal materials "disappeared" during the transfer from Pennsylvania to Massachusetts. See generally Docket # 76, First

---

[1] After he filed this action, Hannon learned in early 2007 that he was scheduled to be transferred again, this time to New Jersey. He filed an emergency motion for a temporary restraining order enjoining the transfer (Docket # 122) which was denied. (Docket # 128). This denial was affirmed on appeal. See Hannon v. Maloney, No. 07-1212, 2007 WL 2793081, *1 (1st Cir. Sept. 27, 2007). In January 2007, the transfer to New Jersey was accomplished.

[2] He also complains that MaryJane Hesse, a Pennsylvania DOC prison official, refused to provide him with requested legal materials. As explained infra, this claim was earlier dismissed.

Amended Complaint, ¶¶ 84-85.  Prior to transferring Hannon, the Pennsylvania DOC instructed him to send all of his property to his family in Florida.  Id.  He objected that he needed access to legal materials relating to pending litigation; he was ultimately permitted to keep one trash bag of personal property and legal materials.  Id.  He sent the remaining 17 boxes to Florida.  Id.  Once he arrived at MCI-Cedar Junction, the trash bag of personal property was returned to him — except that the legal materials were missing.  Id.

### III.   Analysis

#### A.   Claims Against the Pennsylvania Defendants

Plaintiff sued defendants Beard and Hesse for violations of 42 U.S.C. § 1983 and the Massachusetts state constitution.[3]  Hannon contends that Beard transferred him in retaliation for filing lawsuits on behalf of himself and other prisoners claiming violations of the First and Fourteenth Amendments, as well as Articles XI and XII of the Massachusetts state constitution.  See Docket # 76, First Amended Complaint, ¶¶ 81-95.  He also asserts that Beard confiscated and/or deprived him of his legal materials during the transfer from Pennsylvania to Massachusetts.  Id.  Beard now moves for summary judgment (Docket # 209).

##### 1.   Procedural History

Beard and Hesse previously moved to dismiss Counts XI and XII on the ground that, inter alia, the court lacked jurisdiction over them.  (Docket # 92.)  In an order dated

---

[3] These are claims against defendants in their individual capacities.  It is blackletter law that a state official acting in his official capacity cannot be sued under 42 U.S.C. § 1983.  See Johnson v. Rodriguez, 943 F.3d 104, 108 (1st Cir. 1991).

June 26, 2007, this court allowed defendants' motion. (Docket # 133). The First Circuit reversed and remanded with respect to Beard and affirmed with respect to Hesse. See Hannon v. Beard, No. 07-2272, 524 F.3d 275 (1st Cir. 2008) (Docket # 156).

### 2. Pending Motion for Summary Judgment (Docket # 209)

#### a. Retaliatory Transfer

On remand, Beard moved for summary judgment on the ground that there is no admissible evidence that Hannon's transfer was undertaken in retaliation for his having exercised his First Amendment rights. (Docket # 209.)

I start with first principles. A prison may transfer an inmate for any reason, or no reason at all. See Meachum v. Fano, 427 U.S. 215, 224-225 (1976). A prison may not, however, transfer an inmate in retaliation for having exercised his First Amendment right to petition the courts for redress of grievances. See Cornell v. Woods, 69 F.3d 1383, 1387 (8th Cir. 1995).

To prevail on a claim of retaliation against a prisoner for exercising his constitutional rights, the prisoner must prove that (1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) his constitutionally protected conduct was a "substantial" or "motivating factor" in the prison official's decision. See Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Once a prisoner has established a prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that he "would have reached the same decision [] even in the absence of the protected conduct." Id.

At step one, it is clear that Hannon's filing lawsuits on his own behalf is

4

protected activity, and the prison may not retaliate against him for doing so.[4]  Next, it is equally clear that he suffered an adverse action, i.e., transfer from a medium security facility to a maximum security facility.  At issue here is whether there was a causal connection between the transfer and his having engaged in constitutionally protected activity.

Beard concedes that he was the decision maker with respect to the transfer. See Docket # 210, Def. Beard's Statement of Undisputed Facts at ¶ 6.  The question, then, is the motivation for the transfer.  At various stages of the litigation, Beard has given three reasons for the transfer:  Hannon (1) was involved in organizing inmates; (2) tried to smuggle drugs into the institution; and (3) had "separations"[5] from the other inmates.  See Docket # 210, Def. Beard's Statement of Undisputed Facts at ¶¶ 7-8, 15. See also Docket # 211-5, Letter dated October 2, 2001 from Jennifer Hendricks, Pennsylvania DOC to Lori Cresey, Massachusetts DOC (stating that Hannon was being moved "due to his history of using other inmates" and because "he has developed considerable separations within our system.").

Plaintiff contends that the reasons given by Beard are pretextual.  Beard now

---

[4] It is not clear that Hannon has a First Amendment right to bring claims on behalf of other inmates.  However, because he has also alleged retaliation for the exercise of his own First Amendment right, this court need not decide this question.

[5] While it is not entirely clear from the record, the court understands "separations" to refer to administrative separations of one inmate from another.  See U.S. Department of Justice, Federal Bureau of Prisons, Legal Resource Guide to the Federal Bureau of Prisons (2010) <http://www.bop.gov/news/PDFs/legal_guide.pdf> (last visited March 23, 2010).  Here, Hannon was separated from several inmates for whom he attempted to provide legal advice.

concedes that there is no evidence that Hannon was involved in drug activity. Rather, Beard argues that plaintiff has not adduced any admissible evidence that retaliation was the motive for the transfer. Beard is correct. There is no affirmative evidence that Beard was motivated by an intent to retaliate against Hannon. To the contrary, the evidence demonstrates that Beard's decision was based on information contained in a letter from the Superintendent of the Pennsylvania prison stating that Beard was involved in drug activity and was involved in organizing other inmates. Plaintiff does not dispute that he was organizing other inmates and that he had several administrative separations from other inmates. Both are permissible reasons for the transfer, and, absent any evidence of improper motive, cannot be said to be pretext. Even if the information provided to Beard was incorrect, there is no evidence Beard had reason to discount it at the time he made his decision.

### b. Retaliatory Confiscation of Legal Materials

Hannon also asserts a claim against Beard for loss of his property during the move from Pennsylvania to Massachusetts. This claim fails because there is no evidence that Beard had any personal involvement in the handling of Hannon's property. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (liability under § 1983 cannot be based upon respondeat superior; rather, defendant must have actually participated in the conduct resulting in the deprivation). Even assuming some involvement by Beard, plaintiff's claim is foreclosed by Hudson v. Palmer, 468 U.S. 517, 533 (1983) (even unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the due

process clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available through the grievance procedure).

Accordingly, Beard is entitled to summary judgment as to plaintiff's claims under § 1983 and the Massachusetts Constitution (Counts XI and XII).

### B.     Claims Against the Massachusetts Defendants

Hannon also brings suit under § 1983 against Massachusetts officials Michael Maloney (former Commissioner of the Massachusetts DOC), Peter Allen (former Superintendent, MCI-Cedar Junction), Kristie Ladouceur (former Massachusetts DOC Grievance Coordinator), and Gary Fyfe (former Massachusetts DOC Acting Institutional Grievance Coordinator),[6] for violations of 42 U.S.C. § 1983 arising out of the loss of his legal materials during his transfer from Pennsylvania to Massachusetts.  Specifically, he asserts that these defendants failed to ensure his access to the legal materials when he was transferred from Pennsylvania to Massachusetts and to correct the Pennsylvania defendants' actions in depriving him of them.[7]  See Docket # 76, First

---

[6] Plaintiff has dropped this claim against defendant Paul Duford (former Massachusetts DOC Institutional Grievance Coordinator).  See Docket # 237, Transcript of August 11, 2009 Hearing on Motion for Summary Judgment at 36.

[7] Hannon initially asserted three additional claims against Massachusetts defendants Maloney, Allen, Ladouceur, Duford, and Fyfe.  Those claims were that these defendants: (1) were involved in the alleged retaliatory transfer from Pennsylvania to Massachusetts; (2) retaliated against plaintiff by classifying him to a maximum security facility upon his transfer to Massachusetts, rather than a medium security prison; and (3) failed to investigate and/or fairly consider plaintiff's grievances and appeals.  Plaintiff abandoned these claims at oral argument, and they are therefore waived.  See Paulding v. Allen, 393 F.3d 280, 282 (1st Cir. 2005) (claims abandoned at oral argument are waived);  see also Docket # 237, Transcript of August 11, 2009 Hearing on Motion for Summary Judgment at 32-33; 34-35.

Amended Complaint, ¶¶ 81-95; 142-146; Counts XI & XII.

    **1.    Pending Motions**

        **a.    Motion for Summary Judgment on Claims Brought Against Defendants in Their Individual Capacities (Docket # 206)**

Massachusetts DOC defendants Maloney, Allen, Fyfe, and Ladouceur move for summary judgment on the grounds that the complaint fails to allege any facts to support a claim for liability under § 1983 against them in their individual capacities. (Docket # 206.) The motion is allowed.

In general, prisoners have a constitutional right to access legal materials. Courts have recognized that "[a]n absolute denial of access to all legal materials" would be a constitutional violation." Sowell v. Vose, 941 F.2d 32, 35 (1st Cir. 1991) (emphases in original). Nevertheless, in a prison setting, there is no requirement that prisoners must have such access to legal materials at all times. Id. Rather, when a prisoner "complains about some sort of conditional restriction of access to some of them" courts require that the prisoner "show an actual injury as a prerequisite to recovery." Id.

Here, plaintiff has not done so. He does not identify how the missing legal documents related to pending or putative legal claims. Nor does he assert any facts demonstrating that his pursuit of any litigation was "in any way affected by his lack of access to any particular documents." Konigsberg v. Lefevre, 267 F. Supp. 2d 255, 261-262 (N.D.N.Y. 2003). He has simply failed to demonstrate any actual injury, and the court cannot presume harm in evaluating whether defendants have violated his right of access to the courts.

Plaintiff's claim suffers from the additional defect that he has not demonstrated that these defendants had any knowledge of, or role in, any confiscation or loss of his legal materials.

Plaintiff has acknowledged that defendants Fyfe, Duford, and Ladouceur were not personally involved in confiscating his legal materials during the transfer. Rather, his theory is that these defendants, all grievance officers, had the opportunity to take corrective action and failed to do so, in that they denied his grievances without fully investigating them. Defendants move for summary judgment on the ground that their involvement in the alleged deprivation consisted of denying plaintiff's grievance. Because plaintiff has no constitutional right to pursue grievances, this claim is without merit. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (allegation that defendant denied inmate grievance, without more, is not actionable under § 1983). It is correct that a prison official's failure to act when required to do so by regulation may subject the official to liability under § 1983 for acquiescence in the underlying constitutional violation. See Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). However, as discussed above, plaintiff has not adduced sufficient evidence of an underlying constitutional violation. Accordingly, plaintiff's claim against defendants Maloney and Allen fails.

Next, plaintiff contends that Beard specifically instructed defendants Maloney and Allen to violate Hannon's rights. They move for summary judgment on the grounds that they were not personally involved in the deprivation of Hannon's rights, and that supervisory liability may not be predicated upon a theory of respondeat superior.

In the absence of personal involvement, a supervisor is liable for the acts of a subordinate where "(1) the behavior of [the] subordinate[] results in a constitutional violation and (2) the [supervisor's] action was affirmative[ly] link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, coordination or acquiescence or gross negligence [of the supervisor] amounting to deliberate indifference." Hegarty v. Somerset, 53 F.3d 1367, 1379-1380 (1st Cir. 1995) (internal citations omitted).

Here, plaintiff has adduced no facts to suggest an affirmative link between the supervisors' behavior and the constitutional violation. To the contrary, neither was working at the Massachusetts DOC during the alleged violation. Maloney went on medical leave in 2003 and resigned in 2004 — well before the transfer in issue. Allen, too, retired in 2004.

Accordingly, summary judgment is granted as to these defendants.

        **b.**        **Motion for Summary Judgment on Claims Brought Against Defendants in Their Official Capacities (Docket # 206)**

All Massachusetts defendants move for summary judgment on claims brought against them in their official capacities. This court has already held that Hannon cannot pursue his claims for monetary damages against them in their official capacities. (Docket # 133.) It is well established that a plaintiff may not recover monetary damages under 42 U.S.C. § 1983 against defendants in their official capacities. See Johnson v. Rodriguez, 943 F.3d 104, 108 (1st Cir. 1991). To the extent plaintiff proceeds against the Massachusetts defendants in their official capacities, he may do

so for prospective injunctive relief only.  See Docket # 76, Amended Complaint, ¶ 110; see also Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) ("[T]he Eleventh Amendment bars official capacity suits against state actors in federal court unless the suit seeks prospective injunctive relief.") (internal citations omitted).  Because plaintiff failed to demonstrate a constitutional deprivation, the claim for prospective relief fails.

## IV. Conclusion

For the reasons discussed, the Massachusetts defendants' motion for summary judgment (Docket # 206) on Counts XI and XII is ALLOWED, and the Pennsylvania defendants' motion for summary judgment (Docket # 209) on Counts XI and XII is also ALLOWED.

|  |  |
|---|---|
| March 30, 2010 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |