UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12138-RWZ

RAYMOND COOK, *et al.*

v.

MICHAEL MALONEY, *et al.*

ORDER

March 30, 2010

ZOBEL, D.J.

I.    **Overview**

Plaintiffs are present or former inmates at Massachusetts Correctional

Institution-Cedar Junction ("MCI-Cedar Junction").  Defendants are employees of the

Massachusetts and Pennsylvania Departments of Correction.[1]  In a complex and

lengthy amended complaint, plaintiffs have alleged several separate and distinct sets of

claims, including violations of federal and state constitutional rights.  Several claims

were previously dismissed, and judgment was granted in favor of defendants on several

claims.  In this order, I address the final claims of the six remaining plaintiffs.

II.    **Background**

A.    **Procedural Background**

Plaintiffs, originally twelve in number, alleged in a complex and lengthy amended

---

[1] This opinion pertains only to claims against the Massachusetts Department of
Correction, hereinafter "DOC."

complaint several separate and distinct sets of claims, including violations of federal and state constitutional rights as a result of, inter alia: (1) confiscation of prisoners' belongings during search of prisoners' cells; (2) forcible administration of medication; (3) prison assault; and (4) retaliation for filing lawsuits and grievances.  The individual claims did not entirely coincide as to either the underlying facts or the legal theories on which they are based.  The claims ultimately evolved into three separate actions: (1) the Cook Action, (2) the Hannon Action, and (3) the General Action.

In the **Cook Action**, plaintiff Cook alleged that he was forcibly administered anti-psychotic medication and thereafter placed in segregated confinement in June 2001.  The court entered judgment for the medical defendants and the action against the DOC defendants was dismissed by stipulation.  See Docket # # 133, 205, 214.

In the **Hannon Action**, plaintiff Hannon alleged that he was assaulted and transferred in violation of his constitutional rights.  Two counts relating to Hannon's claim for prison assault (Counts XIII and XIV) were previously dismissed.  See Docket # 133.  The Pennsylvania defendants moved to dismiss for lack of personal jurisdiction two counts relating to Hannon's transfer from Pennsylvania to Massachusetts (Counts XI and XII).  The court's allowance of the motion, see Docket # 133, was reversed by the First Circuit.  See Hannon v. Beard, No. 07-2272, 524 F.3d 275 (1st Cir. 2008) (Docket # 156).  On remand, defendants sought summary judgment on the merits.  In an order of even date, I have allowed the motion and have ordered judgment to be entered for the defendants.

In the **General Action**, as discussed infra, plaintiffs brought a number of

separate claims alleging violations of their constitutional rights in retaliation for their having filed lawsuits and grievances.  Defendants earlier moved to dismiss Counts I, II, III, IV, V and VI.  In an order dated June 26, 2007, this court dismissed Counts I and II with respect to claims brought by plaintiffs LoDico, Balsavich and Cook for failure to exhaust administrative remedies, but denied that part of the motion with respect to plaintiffs Hannon, Milliken, King, McArthur, Crosby and Whyte.  The court further denied the Massachusetts defendants' motion to dismiss Counts III and IV (claim by plaintiff Milliken that he was assaulted by three inmates on December 9, 2003) and Counts V and VI (Milliken's claims of retaliation for his filing grievances and lawsuits against several correctional officers as a result of defendants' search of his cell on June 19, 2003, and August 14, 2003).  Now pending are defendants' motion for summary judgment (Docket # 233) as to the remaining plaintiffs and counts (Counts I, II, III, IV, V and VI).

### B.   Factual Background

Plaintiffs Wayne Crosby, Francis Hannon, Kevin King, Lawrence McArthur, Sean Milliken and William Whyte brought this suit for injunctive relief and compensatory damages against current and former DOC officials.  All plaintiffs allege that their cells were searched during an institution-wide search on two separate occasions (June 18-19, 2003 and August 12-15, 2003) in retaliation for their having filed grievances and lawsuits against defendants.

At the time of the June 2003 and August 2003 cell searches, all of these plaintiffs had filed suit challenging the conditions of their confinement in prison and

each had filed multiple grievances.  Plaintiffs further contend that the context surrounding the searches is important.  A few months prior to the searches at issue, the Massachusetts Supreme Judicial Court entered its opinion in Haverty v. Commissioner of Correction, 776 N.E.2d 973 (Mass. 2002), which upheld claims of inmates against the DOC and issued a court order requiring policy changes at MCI-Cedar Junction.

III.   **Analysis**

   A.   **Counts I and II: Claims By All Plaintiffs Regarding June 2003 and August 2003 Cell Searches**

   Defendants to these claims are Michael Maloney (former Commissioner of Correction), Peter Allen (former Superintendent), and two grievance officials Kristie Ladouceur (former Massachusetts DOC Grievance Coordinator), and Gary Fyfe (former Massachusetts DOC Acting Institutional Grievance Coordinator).  Defendants seek summary judgment on the grounds that: (1) plaintiffs failed to exhaust available state remedies; (2) plaintiffs failed to demonstrate a claim for retaliation; and (3) defendants are entitled to qualified immunity.

   1.   **Failure to Exhaust Administrative Remedies**

   This court previously held that the remaining plaintiffs timely exhausted administrative remedies regarding the June 18-19, 2003, and August 14, 2003, cell searches.  See Docket # 133.  Nevertheless, defendants contend that the court did so under a motion to dismiss standard and must now do so under the motion for summary judgment standard.  However, to the extent defendants did not then dispute Hannon and Milliken's compliance with the requirement, they cannot now change horses.  To

4

the extent the court ruled that Hannon, Milliken, King, McArthur and Crosby had exhausted their remedies, that ruling stands.  As to plaintiff Whyte, a factual dispute remains.[2]

### 2.     Plaintiff Has Not Demonstrated a Claim for Retaliation

To prevail on a claim of retaliation for exercise of First Amendment rights under § 1983, a prisoner must demonstrate that (1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) his constitutionally protected conduct was a "substantial" or "motivating factor" in the adverse action.  See Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Once a prisoner has established a prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that he would have engaged in the same actions "even in the absence of the protected conduct."  Id.

It is undisputed that plaintiffs' filing lawsuits contesting their conditions of confinement is constitutionally protected.  Nor is it disputed that intentional destruction or confiscation of personal property and legal materials without cause is an adverse action.  At issue, then, is whether the action was undertaken in retaliation for plaintiffs' having filed lawsuits.

Defendants contend that there were legitimate, penological reasons to conduct institution-wide cell searches on those two days.  See Docket # 235, Ex. H, Affidavit of Ronald Duval at ¶¶ 6, 18 (institutional search was requested by the Superintendent due to an increase in the number of weapons being found and the amount of violence at the

---

[2] For the reasons discussed infra, I need not resolve this factual issue.

institution).

Plaintiffs contend that it is not the fact of the search, but rather the manner in which the search was conducted which gives rise to their claims. Specifically, they allege that their cells were searched in a more aggressive manner than others; legal papers including docket information, court and attorney phone numbers were destroyed or confiscated. See Docket # 76, Amended Complaint at ¶¶ 44-45, 96-105.

Plaintiffs' claims fail. First, there is no evidence that the cells were searched in a disparate manner. The cells were searched by at least 40-50 members of the Special Operations Tactical Response Team in 3-member teams. Plaintiffs point to video clips of a cell in which the inmate's legal materials are shoved in a toilet and strewn about his cell. See Docket # 256, Exhibit 26 (still image of cell), and contrast that image with an image of a searched cell left in neat condition. However, without some evidence of when the images were taken, and by whom, or evidence of which officers conducted which searches, these photos are not probative on the question before me and themselves are insufficient.

Second, even assuming arguendo the cells were searched in a retaliatory manner, defendants' contention that plaintiffs have not adduced evidence that would give rise to liability on the part of these defendants is correct. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (liability under § 1983 cannot be based upon respondeat superior; rather, defendant must have actually participated in the conduct resulting in the deprivation). There is no evidence that any of the named defendants themselves conducted or personally participated in the search. Moreover, the

grievance officer defendants dealt only with issues and complaints made <u>after</u> the search.[3]

### B.   Counts III and IV: Eighth Amendment Claims By Plaintiff Sean Milliken Regarding 12/9/03 Prison Assault

Plaintiff Milliken sues defendants under 42 U.S.C. § 1983 for violating his constitutional rights under the Eighth Amendment, as well as his rights under the Massachusetts Declaration of Rights as a result of his having been assaulted by another inmate on December 9, 2003.

Milliken was attacked by three unknown inmates on December 9, 2003 while in the prison recreation yard.  He contends that defendants Grimes, Deorsey, Medeiros, and Lemon arranged for him to go to the recreation yard at the same time as three other inmates who planned to attack him.  He further alleges that defendants were deliberately indifferent to his safety and placed him at risk of attack by disclosing to his attackers his crime of conviction.

In general, Eighth Amendment principles dictate that conditions of an inmate's confinement not "involve the unnecessary and wanton infliction of pain."  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).  To the extent that prison conditions are merely

---

[3] The Massachusetts DOC defendants also contend that they are entitled to qualified immunity under the Eleventh Amendment with respect to claims brought against them in their official capacities.  This court earlier noted that such claims are foreclosed.  <u>See</u> Docket # 133 ("[i]t is well established that plaintiffs may not recover monetary damages under 42 U.S.C. § 1983 against defendants in their <u>official</u> capacities.  <u>See</u> <u>Johnson v. Rodriguez</u>, 943 F.3d 104, 108 (1st Cir. 1991).").  Plaintiffs now contend that such immunity does not extend to circumstances in which the officials "repeatedly and knowingly" violate a prisoner's constitutional rights. Because I conclude that plaintiffs do not make out a retaliation claim, I need not reach this issue.

"restrictive and even harsh," rather than cruel and unusual, "they are part of the penalty that criminal offenders pay for their offenses against society."  Id.

The gravamen of Milliken's § 1983 claim is that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from assault by other inmates.  The Supreme Court has recognized that the Eighth Amendment imposes on prison officials "a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994).

To prevail on a claim that a defendant failed adequately to protect an inmate from a violent attack by a fellow inmate, a plaintiff must demonstrate that the defendant "acted with deliberate indifference to the plaintiff's safety;"courts have also recognized that "mere negligence will not suffice."  See Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991).

A prisoner must demonstrate two elements, one objective and one subjective, in order to make out a claim of deliberate indifference.  To satisfy the objective prong of the test, "the inmate must show that he is incarcerated under conditions posing a "substantial risk of serious harm" i.e., the deprivation "must be, in objective terms, sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994) (internal citations omitted).  Here, defendants contend that the resulting injury was de minimis.  I need not resolve the dispute, as plaintiff has not satisfied the second prong of the test.

Under the second prong of the test, a prisoner must demonstrate that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

While Milliken contends that he was attacked because the inmates were aware of his crime of conviction, there is no evidence to support this assertion.  The record reflects no evidence that defendants Duford, Ladouceur, Maloney or Allen were in any way connected to the attack, nor that were personally responsible for disclosure of plaintiff's crime or supervised the officers who allegedly participated in arranging the assault.  Moreover, there is no evidence that plaintiff had a history of conflict with the attackers, or that he notified defendants that he feared for his safety.  The record is similarly devoid of any evidence that defendants arranged Milliken's schedule to coincide with that of his attackers.

Accordingly, defendants' motion for summary judgment with respect to Counts III and IV is allowed.

### C.    Counts V and VI: Plaintiff Milliken's First Amendment Retaliation Claim

Plaintiff Milliken next alleges that defendants retaliated against him in violation of his First Amendment right for filing grievances and lawsuits against several correctional officers after defendants searched his cell on June 19, 2003, and August 14, 2003. Specifically, he asserts that defendants: (1) harassed him by calling him names and disclosing to his fellow inmates the nature of the crime for which he was convicted; and (2) prohibited him from receiving visits from his daughter.

### 1.    Verbal Harassment

Plaintiff contends that defendants Lemon, Grimes, Medeiros and Deorsey verbally harassed him by repeatedly using inflammatory and derogatory slurs which disclosed the nature of his crime, and which consequently subjected him to worse treatment both by prison officials and other inmates.  Plaintiff further contends that their doing so directly resulted in the December 9, 2003 assault.

As a general proposition, verbal harassment alone is insufficient to state a claim under the Eighth Amendment.  See also Pittsely v. Warish, 927 F.2d 3, 7 (1st Cir. 1991).  However, where the verbal harassment was calculated to result in some injury, including psychological injury, a remedy lies.  See, e.g., Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998) (allegations of harassment may state a claim under the Eighth Amendment where it is alleged that the harassment was "calculated to and did cause [the prisoner] psychological damage").  Here, plaintiff alleges that the harassment led to the assault against him.  As discussed above, however, the evidence does not support the claimed causal connection.  Accordingly, plaintiff cannot prevail on this claim.

### 2.    Prison Visitation

Next, plaintiff contends that defendants prohibited his daughter from visiting him in retaliation for his having filed lawsuits against prison officials.  See Docket # 76, Amended Complaint §§ 122 and 126.  Defendants counter that the prohibition was required by prison policy.

While incarcerated at MCI-Cedar Junction, Milliken received two or three visits from his daughter, then a minor, prior to 2003.  On June 4, 2003, Milliken's daughter

(then approximately 12 years old) accompanied her mother on a visit to Milliken.  The

daughter was prohibited from visiting Milliken at that time because the mother did not

have the documentation demonstrating that she was the minor's legal guardian.  See

103 CMR 483.11(2)(c)(2)(i)-(ii) (minors who visit an institution must be accompanied by

a parent or guardian with physical custody and demonstrate consent of such parent or

guardian).  During this process, officials at MCI-Cedar Junction became aware that

Milliken's daughter was the victim of the crime for which he was imprisoned.  Pursuant

to prison policy prohibiting minor victims from visiting inmates without prior approval of

the Commissioner of Correction, she was barred from visiting him.  See 103 CMR

483.11(2)(1)("[n]o child who was a victim of the inmate's offense shall be authorized to

visit without the authorization of the Commissioner or a designee.").  Based on this

regulation, the then-Superintendent of MCI-Cedar Junction, Peter Allen, notified

Milliken that his daughter was barred from visiting.  See Docket # 243, Affidavit of

Christopher G. Clark in Support of Pl.'s Opposition to Defs.' Mot. for Summary

Judgment, Ex. 33 (Notification of Barred Visitor dated June 9, 2003).  In August and

October 2004, the child's mother sought permission for her to visit Milliken from then-

Commissioner Dennehy, which was denied.  See Docket # 235, Mem. of Law in

Support of Defendants' Mot. for Summary Judgment, Ex. 24 (Letter dated October 6,

2004).

　　　Plaintiff brings suit against Allen based on his initial June 4, 2003 and

subsequent denials of visitation.  He contends that he was prohibited from receiving

visits from his daughter for five years despite having a court order granting visitation

rights.  He further contends that there is a genuine issue of material fact regarding

Allen's motivation in barring plaintiff's daughter from visiting.

   To prevail on a claim for retaliation, plaintiff must demonstrate that his

constitutionally protected conduct was a "substantial" or "motivating factor" in the

adverse action taken by prison officials.  See Mt. Healthy Bd. of Educ. v. Doyle, 429

U.S. at  287.  Because Allen's prohibition of the daughter's visit on June 4 was

pursuant to regulation, plaintiff cannot prevail without more.  See Jones v. Sandy, No.

Civ. 04-1933 (ALA), 2007 WL 4325578, *4 (E.D. Cal. Dec. 7, 2007) (granting motion for

summary judgment for prison where prison's denial of inmate's visit by family members

was required by prison regulations).  To the extent plaintiff complains about the

subsequent failure to grant written permission, the application was denied by then-

Commissioner Kathleen Dennehy, not defendant Allen.

   Accordingly, defendants' motion to for summary judgment as to Counts V and VI

is allowed.

## IV.    Conclusion

   For the reasons discussed above, the Massachusetts DOC defendants' motion

for summary judgment on Counts I, II, III, IV, V and VI (Docket # 233) is ALLOWED.[4]

---

[4] The DOC defendants moved to strike (Docket # 247) exhibits (Nos. 43, 44, 45)
to Plaintiffs' Opposition to Defendants' Statement of Facts.  The motion (Docket # 247)
is DENIED as moot.

__March 30, 2010__                                   __/s/Rya W. Zobel__
DATE                                                 RYA W. ZOBEL
                                              UNITED STATES DISTRICT JUDGE